UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL MIRANDA, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>U.S. SECURITY ASSOCIATES, INC.,<br><br>   Defendant. | Case No. 18-CV-00734-LHK<br><br>**ORDER RE: MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 86, 87, 88, 90, 91, 92 |

Before the Court are the motions in limine of Plaintiffs, ECF Nos. 86, 87, 88; and the motions in limine of Defendants, ECF No. 90, 91, 92. After reviewing the parties' briefing, the case law, and the record in this case, and balancing the considerations set forth in Federal Rule of Evidence 403, the Court rules as follows:

<u>Plaintiff's Motions in Limine ("MIL")</u>

<u>MIL # 1</u>: Plaintiffs seek to exclude all evidence and testimony by Defendant U.S. Security Associates, Inc.'s ("USSA" or "Defendant") accounting expert, Daniel Korczyk, regarding the intention of the parties. ECF No. 86. Defendant does not oppose. ECF No. 95.

<u>RULING</u>: GRANTED. Specifically, the Court rules as follows.

1

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

Fed. R. Evid. 702 allows an expert witness to testify to "the expert's scientific, technical, or other specialized knowledge" if such expert testimony will assist the jury in understanding evidence or determining a fact in issue. However, courts "routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Ore. 2013); *see also Barten v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 11111309, at *3 (D. Ariz. Apr. 8, 2015) (prohibiting an expert from testifying "as to common sense[ and] state of mind"); *Hill v. Novartis Pharms. Corp.*, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives, or state of mind to be impermissible and outside the scope of expert testimony."); *Johnson v. Wyeth LLC*, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (precluding plaintiff's experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind"); *United States v. Vaughn*, 2008 WL 152135, at *1 (E.D. Cal. Jan. 16, 2008) (excluding "expert opinion of Defendant's knowledge or intent.").

Indeed, Defendant states that it "will stipulate that Mr. Korczyk is not being offered to opine" on the issue of "the Parties' intent." ECF No. 95 at 1. Moreover, even Korczyk acknowledges in his deposition testimony that it is not his place to opine on the intention of the parties:

> A. [I]t sounds like to me [that] you're asking me "was it your intent, Dan, Dan Korczyk, to prove that the *parties intended to use* $125,000 as an expense in calculating EBITDA [(earnings before interest, tax, depreciation, and amortization)[ for purposes of earn-out?" And my answer to that would be no. It was never my intent to try to prove that.

ECF No. 86-2, 197:7-12.

Plaintiffs also argue that "Korczyk's opinion is also based on incomplete evidence" because Miranda's deposition transcript was not available at the time Korczyk wrote his expert report, so Korczyk relied upon Defendant's attorney's representations to determine Miranda's intent. ECF No. 86 at 2. As the Court already explained above and as to which Defendant has stipulated, Korczyk will not testify as to the parties' intent. Thus, it is of no import that Plaintiffs believe Korczyk's opinions as to the parties' intent were based on the representations of

2

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

Defendant's attorney.

Thus, the Court GRANTS Plaintiffs' request to exclude all evidence and testimony by Defendant's accounting expert, Daniel Korczyk, regarding the intention of the parties.

MIL # 2: Plaintiffs seek to exclude all evidence contradicting the Court's findings at summary judgment that (a) Defendant deducted $125,000 from Landmark's EBITDA in an attempt to follow Landmark's historical reporting practices, and (b) the $125,000 deduction was not in compliance with Landmark's historical reporting practices. ECF No. 87 at 1-2. Defendant opposes. ECF No. 96.

RULING: GRANTED. Specifically, the Court rules as follows.

First, the Court addresses Plaintiffs' contention that USSA deducted Miranda's historical $125,000 salary from Landmark's EBITDA in an attempt to follow Landmark's historical reporting practices. Second, the Court addresses whether the $125,000 deduction was not in compliance with Landmark's historical reporting practices.

### 1. Whether Defendant Deducted $125,000 from Landmark's EBITDA in an Attempt to Follow Landmark's Historical Reporting Practices

First, in the Court's May 2, 2019 Order denying USSA's motion for summary judgment, the Court stated:

> [John] Harford testified that under the [Asset Purchase Agreement ("APA")], to calculate branch 224's EBITDA, USSA intended to rely upon a "normalized" profit and loss statement that would mimic how Miranda accounted for his business while Miranda was still in charge of Landmark. Thus, *USSA intended to rely on the historical reporting practices of the seller, Landmark and Miranda*, instead of the buyer, USSA, contrary to the language of the APA.
>
> USSA then burdened this profit and loss statement with the $125,000 Miranda was paying himself when Miranda owned Landmark in lieu of burdening the normalized profit and loss statement with USSA's corporate overhead. This was not a historical reporting policy of Landmark or Miranda.

ECF No. 79 at 11 ("May 2, 2019 Order") (emphasis added) (internal citations omitted). In essence, the Court's May 2, 2019 Order concluded, based on the evidence at summary judgment, that

3

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

Defendant intended to use the sellers' (Miranda and Landmark) historical reporting practices to calculate EBITDA. Indeed, John Harford, Defendant's chief development officer, confirmed that Defendant calculated EBITDA in accordance with sellers' historical reporting practices to give Miranda "'confidence that we had an apples-to-apples comparison as we looked at out-year performance relative to how [Miranda] managed the business from an accounting standpoint' prior to Landmark's sale." *Id.* (quoting ECF No. 68-2, Ex. 1 at 67:20-24).

Defendant's reliance on the historical reporting practices of Miranda and Landmark to calculate EBITDA is at odds with the APA, which states that EBITDA is "determined in accordance with [Defendant's] historical reporting policies." ECF No. 70, Ex. 2 at 1. The Court's May 2, 2019 Order unequivocally held that "despite the APA's language requiring the EBITDA to be calculated in accordance with USSA's historical reporting practices, USSA asserts it calculated the 2017 EBITDA according to Landmark's historical reporting practices." ECF No. 79 at 18. Thus, the Court has conclusively determined at summary judgment that Defendant deducted $125,000 from Landmark's EBITDA in an attempt to follow Landmark's historical reporting practices.

Courts have granted motions in limine to exclude testimony on issues "already . . . ruled on" at summary judgment. *Galen v. Avenue of the Stars Assocs., LLC*, 2011 WL 837785, at *2 (C.D. Cal. Mar. 1, 2011); *see also Magadia v. Wal-Mart Assocs., Inc.*, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) (granting motion in limine because "the Court has already ruled on these matters in its summary judgment orders," thus "testimony on these issues would have no probative value, and would merely waste time"); *Bob Barker Co. v. Ferguson Safety Prods., Inc.*, 2007 WL 4554012, at *1 (N.D. Cal. Dec. 4, 2007) (granting motion in limine "to disregard evidence probative of breach as it relates to issues already decided on summary judgment"); *Mag Instrument, Inc. v. Dollar Tree Stores Inc.*, 2005 WL 5957825, at *1 (C.D. Cal. Apr. 14, 2005) (granting motion in limine to preclude an affirmative defense because "this issue has already been decided . . . at the time of summary judgment on the affirmative defenses"). As discussed above, the Court's May 2, 2019 Order explicitly stated that Defendant deducted Miranda's historical

4

salary from Landmark's EBITDA in an attempt to follow Landmark's historical reporting practices. Allowing Defendant to relitigate the issue at trial "would have no probative value, and would merely waste time." *Magadia*, 2018 WL 6003376, at *2.

Defendant argues that the Court's May 2, 2019 Order held that the APA is ambiguous, thus parole evidence is admissible to ascertain the parties' intent. ECF No. 79 at 9. Defendant then cites parole evidence concerning the parties' intent regarding how to calculate the EBITDA. Defendant's arguments and citations to parole evidence are a transparent attempt to relitigate issues already decided at summary judgment. A motion in limine is not an opportunity to relitigate a summary judgment order. *Dominguez v. City of Los Angeles*, 2018 WL 6164278, at *11 (C.D. Cal. Oct. 9, 2018); *see also Atencio v. TuneCore, Inc.*, 2018 WL 6265073, at *5 (C.D. Cal. Nov. 13, 2018) ("The parties may not relitigate the summary judgment motion using motions in *limine*."); *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *3 n.31 (C.D. Cal. Mar. 7, 2011) (stating in a motion in limine order that the court "will not indulge [plaintiff's] efforts to revive its unsuccessful summary judgment arguments" (quoting *NIC Holding Corp. v. Lukoil Pan Americas*, 2009 WL 996408, at *2 (S.D.N.Y. Apr. 14, 2009))).

Therefore, the Court GRANTS Plaintiffs' motion in limine to exclude all evidence contradicting the Court's finding at summary judgment that USSA deducted $125,000 from Landmark's EBITDA in an attempt to follow Landmark's historical reporting practices.

**2. Whether the $125,000 Deduction was not in Compliance with Landmark's Historical Reporting Practices**

Second, the Court addresses whether Defendant should be precluded from introducing evidence contradicting the Court's finding that the $125,000 deduction from Landmark's EBITDA did not comply with Landmark's historical reporting practices.

The Court's May 2, 2019 Order held that "USSA applied a $125,000 deduction to branch 224's 2017 EBITDA in lieu of business overhead. However, USSA, Landmark, and Miranda's historical reporting practices did not deduct Miranda's salary in lieu of business overhead." ECF No. 79 at 18. Thus, the Court's May 2, 2019 Order held that the $125,000 deduction from

5

1  Landmark's EBITDA did not comply with Landmark or Miranda's historical reporting practices.
2  As discussed above, courts have granted motions in limine on issues already addressed at
3  summary judgment. *Magadia*, 2018 WL 6003376, at *2 (granting motion in limine because "the
4  Court has already ruled on these matters in its summary judgment orders," thus "testimony on
5  these issues would have no probative value, and would merely waste time"). Here, the Court
6  clearly held at summary judgment that Defendant's $125,000 deduction of Miranda's historical
7  salary from the calculation of Landmark's EBITDA was not in compliance with Landmark's
8  historical reporting practices.

9  Thus, the Court GRANTS Plaintiffs' motion in limine to exclude all evidence
10 contradicting the Court's finding at summary judgment that the $125,000 deduction was not in
11 compliance with Landmark's historical reporting practices.

12 However, the Court's rulings above do not preclude the parties from, *inter alia*, presenting
13 admissible testimony and evidence of their understanding of what the APA meant by "Buyer's
14 historical reporting practices" or whether the $125,000 deduction from Landmark's EBITDA was
15 in compliance with the APA.

17 MIL # 3: Plaintiffs seek to exclude all testimony and evidence relating to the job performance of
18 Plaintiff Daniel Miranda as USSA's senior vice president of strategic development and innovation.
19 ECF No. 88 at 1. Defendant opposes. ECF No. 97.
20 RULING: DENIED. Specifically, the Court rules as follows.
21 Plaintiffs argue that testimony regarding Miranda's job performance is irrelevant and thus
22 should be excluded. ECF No. 88 at 1. Plaintiffs note that throughout "the litigation of this case,
23 Defendant has repeatedly suggested that Miranda's performance as a USSA employee was
24 lackluster." *Id.* On the other hand, Defendant argues that if the Court were to grant this motion in
25 limine, USSA would be precluded from defending itself "by showing that Miranda's own conduct
26 led to, or at the least significantly contributed to, the loss of much of the former Landmark
27 business." ECF No. 97 at 1.

Plaintiffs' fourth cause of action is for breach of the covenant of good faith and fair dealing. ECF No. 1 at ¶¶ 41-48. Specifically, Plaintiffs allege that in "failing to act in a commercially reasonable manner, USSA has caused the Acquired Landmark Business to earn substantially less income than it should have, thus depressing the Earn-Out Payment owed to Miranda and Landmark for 2017." *Id.* at ¶ 46. Moreover, Plaintiffs allege that "USSA also caused the loss of nearly all of Landmark's customers through its mismanagement." *Id.* at ¶ 47.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and that fact is "of consequence in determining the action." Fed. R. Evid. 401.

Evidence of Miranda's work performance at USSA is relevant to Plaintiffs' fourth cause of action—breach of the covenant of good faith and fair dealing—because Defendant seeks to ascribe at least a part of the loss of Landmark's business after Defendant acquired Landmark to Miranda's failings as Defendant's employee. For instance, the Rule 30(b)(6) deposition of Defendant's chief human resources officer David Kahn states:

> Q. Now, you testified to me earlier that [maintenance of business and relationships with USSA's former Landmark clients] was not one of [Miranda's] formal job duties. So would you say that this response is incorrect, or do you want to revise your earlier statements? . . . .
>
> A. I would say that there is a reasonable expectation that we have, that anyone who brings business with them and joins the organization, that as an executive, in addition to their duties and responsibilities, they would have an interest and a desire and an expectation that we would keep the business that we have, and they would play a role in that.
>
> Q. Okay. And what role was Mr. Miranda expected [to] play in maintaining Landmark's business?
>
> A. It would depend on the circumstances. One would hope that he would be aware of any issues or concerns that his – that clients might surface, and work with the appropriate parties to remediate that, to step in and maintain those relationships as appropriate with, in concert with the individuals that are directly responsible for the day-to-day running of [Landmark].

ECF No. 97-1, 116:9-117:8. Essentially, Kahn states that there was an expectation that Miranda would play a role in maintaining Landmark's business, especially during the transition of

ownership. Thus, if Miranda was expected to play a role in maintaining Landmark's business but failed to do so, then Defendant's evidence is highly relevant to Defendant's defense against the breach of the covenant of good faith and fair dealing claim because the loss in Landmark's business would be attributable, at least in part, to Miranda and not Plaintiffs.

In addition, a "motion in limine is not a substitute for summary judgment and is not the appropriate venue to determine whether [the defendant] has sufficient evidence to succeed on its defense." *Mims v. Federal Express Corp.*, 2015 WL 12711651, at *3 (C.D. Cal. Jan. 15, 2015). "Although district courts have broad discretion in ruling on motions *in limine*, courts must be careful not to use them to resolve factual disputes or to weigh evidence." *Id.* at *1. If the Court excludes evidence of Miranda's job performance, the Court would be impermissibly resolving a factual dispute over whether Miranda's job duties while employed by Defendant included continued involvement with Landmark. Also, if the Court excludes evidence of Miranda's job performance, the Court would impermissibly be rendering summary judgment on the merits of Defendant's defense.

Thus, the Court DENIES Plaintiffs' motion in limine to exclude evidence of Miranda's job performance.

Defendant's Motions in Limine ("MIL")

MIL # 1: Defendant seeks to exclude the testimony of Plaintiffs' witnesses Jim Murphy and Margaret Jackson because the first time Plaintiffs disclosed these two witnesses was in the parties' joint pretrial statement and proposed order. ECF No. 90 at 1. Plaintiffs oppose. ECF No. 98.

RULING: GRANTED. Specifically, the Court rules as follows.

Plaintiffs' opposition to Defendant's motion in limine concedes that two individuals, Jim Murphy and Margaret Jackson, were not disclosed as potential witnesses until "after discovery responses were due." ECF No. 98 at 1. "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As to any substantial justification for Plaintiffs' belated disclosure of the two witnesses,

8

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

1  Plaintiffs offer no explanation other than the fact that the two witnesses were "equally known to
2  Defendant." ECF No. 98 at 1. Specifically, Murphy was manager of Civic Center Tower, first
3  Landmark's client then USSA's client until the property owner terminated the contract. *Id.*
4  Moreover, Defendant employed Jackson, who worked as a security guard at Civic Center Tower.

Courts have dismissed the argument that because a witness was "equally known to Defendant," the late disclosure of such a witness is excusable and substantially justified. *See, e.g.*, *Guajome Park Academy, Inc. v. Duperry*, 2008 WL 11337592, at *1 (S.D. Cal. Mar. 12, 2008) ("Defendant argues that the previously undisclosed witnesses and documents should not be excluded because they present no surprise to Plaintiff. . . . The Court disagrees and concludes that Defendant's failure to timely disclose the witnesses and documents violated Rule 26."). Thus, Plaintiffs' excuse that the two witnesses were "equally known to Defendant," ECF No. 98 at 1, is unpersuasive and does not constitute substantial justification for the belated disclosure of the two witnesses.

As to prejudice resulting from Plaintiffs' belated disclosure, Plaintiffs argue that Defendant "still has the ability to contact [Murphy and Jackson] at any time in the next four weeks before trial." ECF No. 98 at 2. However, fact discovery closed on October 31, 2018. ECF No. 34 at 2. Therefore, Defendant has been deprived of the opportunity to conduct discovery related to Murphy and Jackson or take their depositions. Courts have held that depriving a party of the opportunity to conduct discovery or depose untimely-disclosed witnesses demonstrates harm. *See, e.g.*, *La Loma Grande LLC v. United States Dep't of Homeland Security*, 2015 WL 11163636, at *1 (D. Ariz. Aug. 3, 2015) ("La Loma's failure to disclose the witnesses in a timely manner is not harmless: if the United States had known that La Loma intended to call Ms. Ziegler and Ms. Hoskin as witnesses, the United States could have deposed the individuals or otherwise explored the contours of their expected testimony during discovery.").

In sum, Plaintiffs have failed to timely disclose Jim Murphy and Margaret Jackson as witnesses, and have not shown that the failure to disclose was substantially justified or harmless. Thus, the Court GRANTS Defendant's motion in limine to exclude the testimony of Jim Murphy

9

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

1 and Margaret Jackson.

MIL # 2: Defendant seeks to exclude Miranda's testimony that Defendant intentionally sabotaged Landmark to avoid paying the earn-out payments, which were contingent on Landmark's annual EBITDA exceeding $500,000. ECF No. 91 at 1. Plaintiffs do not oppose.

RULING: GRANTED. Specifically, the Court rules as follows.

Plaintiffs do not oppose the instant motion in limine to prohibit Miranda from offering his lay opinion that Defendant "purposefully or intentionally lost [Landmark's] clients." Thus, the Court GRANTS the motion in limine to exclude Miranda's testimony that Defendant intentionally sabotaged Landmark to avoid paying the earn-out payments.

However, note that the Court's ruling does not preclude Plaintiffs from arguing "to the jury on closing arguments Defendants' gross malpractice with regard to the Landmark business included purposeful or intentional acts, if the evidence elicited at trial supports an argument." ECF No. 99 at 1.

MIL # 3: Defendant seeks to exclude evidence related to, and argument concerning, Plaintiffs' purportedly new theory of liability that Miranda did not resign but was instead involuntarily terminated by Defendant without severance. ECF No. 92 at 1. Plaintiffs oppose. ECF No. 100.

RULING: DENIED. Specifically, the Court rules as follows.

Defendant argues that Plaintiffs belatedly presented a theory of liability that Miranda did not resign but instead was involuntarily terminated by Defendant. ECF No. 92 at 1. Defendant argues that allowing the involuntary termination theory of liability would prejudice Defendant, "who has not had a chance to obtain discovery on this theory." *Id.* On the other hand, Plaintiffs argue that Defendant would not be prejudiced if Defendant were to litigate the involuntary termination theory of liability because the theory "involves an interpretation of facts that are not in dispute." ECF No. 100 at 1.

The Employment Agreement provides that Miranda shall receive severance payments if

10

"Defendant terminates [Miranda] without cause or [Miranda] resigns for "Good Reason." ECF No. 70, Ex. 3 at 3. "Good Reason" is defined as Defendant's material breach of the Employment Agreement. *Id.* at 2. "Material breach" is defined as, *inter alia*, "the breach of any of [Defendant's] material obligations under this [Employment] Agreement or under general California employment law." *Id.*

About ten months ago, Miranda testified at his deposition on October 1, 2018, that "I think I am entitled to severance because I was terminated [by Defendant]." ECF No. 75, Ex. 2 at 159:17-18.

Moreover, about nine months ago, Defendant's chief human resources officer testified at his October 29, 2018 deposition that Miranda's employment ended on January 19, 2018 even though Miranda intended to resign effective January 29, 2018, ten days later. Specifically, at the October 29, 2018 deposition of David Kahn, Defendant's chief human resources officer, Kahn testified:

> Q. [Y]ou said Mr. Miranda resigned, right?
>
> A. Correct.
>
> Q. He resigned effective January 29th?
>
> A. Correct.
>
> Q. But, in fact, his employment ended on the 19th?
>
> A. I would have to confirm the records, but we stopped paying him as of the 19th, yes.

ECF No. 70, Ex. 16 at 102:17-25.

Moreover, the facts underlying Plaintiffs' involuntary termination theory are undisputed. Specifically, in the parties' June 27, 2019 joint pretrial statement, the parties stipulated to the following facts: "Miranda notified Defendant that he intended to resign his employment effective January 29, 2018," but "Miranda was employed by Defendant from August 26, 2016, until January 18, 2018." ECF No. 93 at 6-7. Thus, Miranda's employment ended 11 days before Miranda's intended effective resignation date. The Court notes that Defendant stipulated to an

11

Case No. 18-CV-00734-LHK
ORDER RE: MOTIONS IN LIMINE

employment end date of January 18, 2018, even though Defendant's chief human resources officer David Kahn had testified that Miranda's employment ended on January 19, 2018. Moreover, in their joint pretrial statement, the parties also stipulated that "Defendant has issued no severance payment to Miranda under the Employment Agreement." ECF No. 93 at 6.

Defendant insists that it did not have notice of Plaintiffs' involuntary termination theory until Plaintiffs' opposition to Defendant's motion for summary judgment. However, Defendant's motion for summary judgment included a footnote anticipating Plaintiffs' involuntary termination theory. The footnote stated: "Miranda was also eligible for severance if he was terminated without cause, but it is undisputed that he was not." ECF No. 68 at 20 n.8.

Even assuming *arguendo* that Defendant did not have notice of Plaintiffs' involuntary termination theory until Plaintiffs' opposition to Defendant's motion for summary judgment, Defendant fails to show that it was prejudiced in any way.

"While many courts have held that a plaintiff may not raise new theories in opposition to summary judgment, this court held in *Jefferson v. Chase Home Fin.*, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) . . . that a more accurate statement of the law is that a court has discretion in determining whether to allow a new theory of liability to be introduced at summary judgment." *Johnson v. Northwest Airlines, Inc.*, 2010 WL 5564629, at *4 (N.D. Cal. May 5, 2010). However, even "where plaintiffs shift gears and set forth an entirely new theory in opposition to summary judgment, some prejudice to defendant must be shown for this court to reject a new theory." *Id.*

There is no prejudice to Defendant for various reasons. First, at his October 1, 2018 deposition, Miranda testified that he believed he was entitled to severance because he was terminated by Defendant. ECF No. 75, Ex. 2 at 159:17-18. Second, at his October 29, 2018 deposition, Defendant's chief human resources officer David Kahn acknowledged that Miranda's employment ended on January 19, 2018 even though Miranda resigned effective January 28, 2018. ECF No. 70, Ex. 16 at 102:17-25. Thus, Defendant's own executive admitted that Miranda's employment ended before Miranda's effective resignation date. Moreover, Defendant even stipulated to the fact that Miranda was to resign on January 28, 2018, but that Defendant only

12

employed Miranda through January 18, 2018. ECF No. 93 at 6-7. In addition, Defendant's summary judgment motion preemptively addressed Plaintiffs' involuntary termination theory. ECF No. 68 at 20 n.8. In sum, Defendant is not prejudiced even if Plaintiffs' involuntary termination theory was belatedly presented.

This Court's holding in *Ortega v. Neil Jones Food Co.*, 2014 WL 232358 (N.D. Cal. Jan. 21, 2014), is instructive. In *Ortega*, the defendant argued that the plaintiff should not be permitted to raise new allegations that were not presented in the plaintiff's complaint asserting a sexual harassment claim. 2014 WL 232358, at *4. However, this Court found that deposition testimony had put the defendant on notice of other incidents on which the plaintiff's sexual harassment claim was based. *Id.* at *5. Here, similarly to *Ortega*, Miranda's October 1, 2018 deposition testimony and Defendant's chief human resources officer David Kahn's October 29, 2018 deposition testimony put Defendant on notice of Plaintiffs' involuntary termination theory. Moreover, Defendant has stipulated to the facts giving rise to Plaintiffs' involuntary termination theory. Ultimately, Defendant is unable to show prejudice; thus, Plaintiffs' involuntary termination theory survives.

In sum, the Court DENIES Defendant's motion in limine to exclude evidence related to, and argument concerning, the theory of liability that Miranda did not resign but was instead involuntarily terminated by Defendant without severance.

**IT IS SO ORDERED.**

Dated: July 8, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge